Appeal Number 14-1468, Versata Software, Inc. v. Callidus Software, Inc. Ms. Fishman, whenever you're ready. Good morning. May it please the Court. When Congress enacted AIA Section 18 in the Transitional Program for Covered Business Method Patent Review, or CBM Review, it created a statutory stay provision unique to that proceeding. It doesn't apply to other post-grant proceedings. That stay provision includes a four-factor test which places added emphasis on reducing the burden of district court litigation for suspect business method patents. In July, this Court issued its first precedential decision reviewing the application of that four-factor test in virtual agility. Both virtual agility and the four-factor test of AIA Section 18 strongly favors entry of stay in the district court proceedings below. Here, there is no dispute that Versata's asserted patents are CBM patents, or covered business method patents. And at the time of the district court's ruling denying stay, the Patent Trials and Appeals Board had already found that 54 claims of Versata's three patents ensued, including every independent claim of those three patents. Why is it that you petitioned the PTO for all the claims of one of the patents, but then only some of the claims for the other two patents? That's a fair question, Your Honor. The reason we petitioned on the claims we did is because for the claims of the 024 and 304 patents, they included a limitation that we believed that there was no Rule 11 or good faith basis for Versata to assert. And so when we petitioned on those 54 claims, we included every claim where we thought there could conceivably be a good faith basis and just in abundance of caution, every independent claim. So to that point, when the district court says in her opinion that Calidice chose to put into review a subset of the claims at issue, that was certainly not our intent. We intended to put every claim at issue. But based on our understanding of what would be at issue, since we did not yet have a disclosure of asserted claims, we relied on our understanding of where we thought there could conceivably be a basis to assert. But to give the district court judge a little bit of credit here, you could understand why she'd feel a little stuck, where she would see that even if all the petitioned for claims, which were granted, ultimately fail in front of the patent board, this case is still going to come back to her after that because there's still going to be claims that she's going to have to deal with, right? I agree, Your Honor. I believe that the district court in her analysis on stay factor one did not assess whether or not a stay would simplify issues in the litigation or whether it would streamline the trial. What she did instead was considered whether or not it could potentially dispose of litigation. And in the absence of findings actually considering how the instituted claims would affect what remained to be tried or remained to be considered in the litigation, it's our position that that creates a rule that's not supported by either the statute, the decisions of other district courts, or the policy behind the statute itself. So it's your view that the district court judge needed to do more and needed to explain what relationship, if any, there is between the claims that are before the patent board and any other claims that would come back to her? That's correct, Your Honor. It's our position that she needed to consider the effect that the instituted claims would have on the issues in the litigation. The other side says you waived that argument. That's incorrect. Both in terms of what the other side's position is is that we never raised the issue of asymmetry of claims in the briefing. And while that's true, the briefing was submitted and completed before Versada had ever identified its asserted claims. In a hearing before the court, we raised the fact that we intended to consolidate the claims. But more than that, we raised the fact that for the remaining claims, they were all dependent claims. They depended from independent claims that had been challenged and at that point had been instituted for review, and that the remaining claim limitations under review, or excuse me, the remaining claim limitations of the not initially challenged remaining dependent claims were either identical to or substantially similar to those claims that had already been submitted. And so, you know, we did not know at the time, of course, that would be the basis for the district court's denial of a stay with respect to the 024 and 304 patents. So there was no additional briefing on it, but certainly the fact of the argument had been raised before the district court. And on that point, you know, I would remind the court, not that I need to, but that under the basis that was instituted for review before the Patent Trials and Appeals Board, which is the patentable subject matter of Section 101, the Supreme Court, both in Alice and in Mayo before it, made it very clear that it's a two-part test for assessing patentable subject matter. First, you look to the claim and whether or not it's directed to an abstract idea, and then you look to whether or not there are additional limitations that provide meaningfully more to tie down the abstract idea to salvage the claim. And in the context of the remaining claims that were not initially challenged, it's a true statement that at least the first part of that analysis will be done for the court by the Patent Trials and Appeals Board. The Patent Trials and Appeals Board will determine whether or not those instituted independent claims are directed to abstract ideas. If they are, then in order to dispose of the remaining dependent claims in district court, the district court need only consider whether or not the additional limitations do something substantially more to tie down the abstract idea. In many cases, those remaining dependent limitations are identical to claims that have already been instituted in the first round of CBM proceedings. Even where there are no identical limitations, for the few remaining claims where there are no identical limitations, they are substantially similar to the subject matter that's already before the Patent Trials and Appeals Board. Are you asking us to make our own independent assessment of that? I guess I would say that depends. I believe it's a dangerous rule to create the presumption that because not all claims are challenged or instituted, that CBM proceedings cannot streamline a trial or simplify issues in the litigation. As a matter of policy, as a matter of statutory interpretation and consistent with other district courts, I would say I don't think you need to reach the issue of making the findings because I don't believe the district court did. I think there's enough here to see that the simplification of the independent claims and the simplification of the claims instituted means that it would simplify. However, if that's material to the issue of whether or not this court believes a stay is appropriate or whether it believes that it's necessary for Factor I, then I would say yes, this court is as well situated as was the district court to make those findings. Returning to Factor I, as I mentioned, for Factor I, because 54 claims were instituted, including every independent claim, certainly there will be a simplification of issues in the trial court. Does that mean that all claims will be resolved? Potentially not. But I would just, as an initial matter, like to correct some of the math in the district court's opinion. Correct math is probably not to clarify the math in the district court's opinion. The district court identifies 42 remaining dependent claims in her order that she indicates will not be addressed by CBM review. As is reflected in the briefing and also in the patents themselves, this number really should be 28 claims because the 28 claims of the 024 patent that she points to are really duplicates of the same 14 claims. They're literally identical claims. So there are 28 claims that were not initially submitted in the CBM petition. Of those 28 claims, six claims contain identical limitations to those that have already been instituted. And we submit that with respect to even the remaining claims, they would be significantly streamlined given the findings that will be made and the conclusions that will be made by the patent trials and appeals board. But even if that were not the case, it's our position that with respect to a statutory stay factor, one, there is no requirement that it eliminate or potentially dispose of all issues in a litigation. In fact, in many cases it can't dispose of all issues. But it's definitely the case, it's certainly the case here that it will simplify and streamline issues in the litigation. Notably, the statutory factor itself, the plain text of the statutory factor is that it requires CBM review to simplify issues, not eliminate all issues in litigation or potentially dispose of all claims. And even... That is your second round of CBM petitions. Yes, Your Honor. We will have an institution decision next month. And so if instituted, it would certainly be our preference to consolidate proceedings and dispose of all of the issues together. Aren't you having a hearing date on the first round of petitions pretty soon? That's correct. The board... So you would have to delay that? Well, the board has already slightly delayed it for scheduling reasons of their own. So our hearing now is set for October 29th. And when we sought to consolidate and expedite review on the second set of petitions to take care of the remaining claims, that effort was opposed by Versada. It would be our... Both our goal, our objective to... Assuming those claims are instituted in the second petitions to seek expedited treatment since the issues in Maine will have already been decided, presumably an oral hearing or at least for purposes of issuing a final decision to attempt to have treatment of those claims together. But again, that's not entirely in our control. What about your own counterclaims? I mean, I guess the other side's pointing out that even if you win on this current round of CBMs, the judge below is going to have to look at your counterclaims one way or another, sooner or later. Right. Well, so I guess two points there. First of all, I think it's a fair statement that nothing that happens with respect to the CBM and Versada's own assertive patents is in a vacuum in terms of our assertion of claims. Our assertion of claims, our counterclaims, we propose to stay them pending review. Candidly, it would be my anticipation that should the claims be canceled, the parties will likely reach a settlement. And I think that's also one of the objectives of stays pending CBM review is that it permits parties to try and resolve their claims and resolve their issues. So I don't think that those claims will be unaffected by what happens with Versada's claims. But more to the point, the fact that we have counterclaims, those could never be addressed by us in a CBM petition. So it's a little bit like saying the CBM petition won't address issues of infringement or estoffel or latches. By design, that transitional program is not designed to consider such issues. Yet even so, Congress placed a heavy thumb on granting stays of litigation pending resolution of a CBM review. Because the statutory purpose underlying it is because once instituted, there's a presumption that these are suspect patents. As a matter of public policy, we're going to allow people to challenge them in the patent office and let the patent office determine whether they're valid or not before engaging in burdensome district court litigation over those claims. So it's true that we have patent counterclaims. But what I would say is that the relevancy of those claims here are only in as much as if we were using them to accomplish a tactical advantage, and we're not. And since we couldn't have submitted them for CBM review in any event, they're not strictly relevant to whether or not a stay pending CBM review of Versada's patents in suit will simplify the litigation on Versada's patents in suit in the district court. So moving on to the still stay factor one, but what that stay factor requires. I would also note that the conclusion of the district court is inconsistent with other district court decisions that have stayed cases pending CBM review where not all claims were challenged or even not all patents were challenged. So in addition to the Versada v. Dorado decision cited in our papers, there's also been a decision post this court's decision in virtual agility in Intellectual Ventures v. PNC, which came out on August 12, 2014, and I can provide a citation if the court wishes. But one of the things that this, obviously it's not binding on this court, but one of the things that the district court there observed that I think applies here is the court notes that if it were to dedie a stay and try even a portion of the case before the PTO renders its decision on the patents at issue, judicial resources would not be wisely employed. And here there's such an overlap between the three patents. There's an overlap of inventors, there's an overlap of subject matter, specification, and even claims, that by allowing litigation to proceed on part without knowing what, if any, is going to survive on the other side of CBM review, not only do we have the burden of litigation, but we are potentially multiplying proceedings because we may need to redo claim construction once we get there or redo expert reports if anything survives review. That certainly was not the intent of the statutory stay regime for CBM review. And very briefly, with respect to factors two, three, and four, under this court's virtual agility decision, stay factors two, three, and four were even more heavily in favor of stay here than did the facts in virtual agility. With respect to stay factor two, a final decision from the PTAB is expected more than eight months before trial, as opposed to in virtual agility it was in the midst of trial. With respect to stay factor three, the district court made no findings of prejudice, and her only finding with respect to tactical advantage was based on an erroneous understanding of the record below. And finally, with respect to stay factor four, not only does continuing to litigate issues that are so overlapping increase the burden, potentially even multiply proceedings, but at the time the district court rendered her decision on stay factor four and on the stay in general, Rosada still had a motion to amend claims pending, and she failed to weigh that. The lower court failed to weigh that in considering that the burden of litigation could potentially multiply proceedings if there were going to be an amendment of claims in the PTAB that would require supplemental claim construction discovery and the like. And also with respect to stay factor four, in our case, the district court failed to make any findings relevant to the issue of what the burden of litigation, what a stay would do to the burden of litigation. Instead, her findings had to do with preliminary motion practice. Mr. Fishman, you're well over your time, but we'll give you two minutes for rebuttal. Thank you. I appreciate it, Your Honor. I'd like to make sure the other side has 17 minutes. Good morning, Your Honors. Is it Mr. Sivins? Yes, sir. Okay. Mr. Sivins, yes, Your Honor. Connor Sivins on behalf of the appellees, Rosada entities. May it please the Court. I want to start out by addressing some of the things Ms. Fishman said at the outset. First, Judge Robinson's decision. Ms. Fishman started out talking about how Judge Robinson's decision wasn't consistent or she didn't properly apply the first factor. And I think Judge Robinson's decision was entirely consistent with this Court's decision in virtual agility. Judge Robinson looked at what had been filed, looked at the record, and noted that only a subset of the claims had been challenged, noted that there is only a 101 challenge in play. 102, 103, 112 have been held back by CALDIS. And in addition, CALDIS has asserted three of their own patents and over 30 claims against Rosada. There is a myriad of issues that will not be addressed regardless of what the PTAB decides to do in March, and Judge Robinson was aware of that. But the independent claims were put in play, and if the PTAB validates those independent claims under 101, that will significantly simplify matters. I agree. Potentially end matters. I don't agree that it would potentially end matters because we would still have dependent claims that are live in the case. Of course. And because CALDIS has counterclaims that would be live in the case, and I'll get to those in a minute. So I agree that it would simplify if all of those claims are canceled, it would simplify matters. But it's only one of the factors. And if the first factor of whether things are simplified was simply a yes or no question, then I don't think we would ever be here arguing these types of cases. If that was the end of the inquiry, there's always going to be some simplification. Even if the claims weren't canceled, then at the very least, CALDIS would be a stop from arguing the 101 at the trial court. That's a simplification. But that's not the end of the inquiry. It's part of the inquiry. And I think if you look at my reading of virtual agility, of this Court's decision of virtual agility, is under that first factor, under the simplification and streamlining of the issues for trial, the Court was very clear that it was significant that all of the claims were challenged on the sole asserted patent, and that's not the case here. So I agree, Your Honor. If the claims are canceled, certainly that would simplify things. However, Judge Robinson was aware, as Judge Chin noted, that no matter what, these are going to come back to her. There are going to be live dependent claims that need to be litigated, 102, 103, 112 issues, and the counterclaims are all going to come back to Judge Robinson. Next, I want to address – there was some early talk in Ms. Fishman's presentation about the dependent claims. This argument has been waived. It was never raised before in the briefing. It was never raised before the district court. Well, they didn't have an opportunity to raise it in the briefing, right? It was – some would say it was your side that was a little bit tactical in electing to identify which claims you'd ultimately be asserting only after they filed their CBM petitions. Well, what we did, Your Honor, was we provided our infringement contentions in compliance with the scheduling order. And I don't think there was any suggestion that we should do otherwise. That's what we do in every case. And so – and I agree that the initial briefing had wrapped up prior to that time period. But there were notices of subsequent events filed. Absolutely, if that was an argument they wanted to make, they should have requested permission and briefed that. The only – I believe Ms. Fishman mentions that there was maybe a sentence mentioned in a discovery hearing. I find it interesting that Caldas is criticizing Judge Robinson for failing to make this comparison of the independent claims under review and these dependent claims not under review when she was never presented with the analysis or argument at all. I can't comprehend how that would be some sort of an error on her part. Additionally, these dependent claims that they're talking about, they're not at issue. They haven't been instituted yet. And so I don't think that they're before this court. Obviously, they can be considered as a general matter, but they haven't been instituted. No decision has been made. Even in the briefing to this court, all Caldas really does is they cherry pick three of the dependent claims not under review and compare them to the independent claims and say, well, the language is substantially similar or identical. And then they make the conclusion statement and so are all the others. First of all, that's not correct. And this is actually a good and unfortunate opportunity to print out a typo in our brief. We gave a few examples on page 17 of our response brief of claims that had no analog, that did not have similar language. And I'll note on page 17, we list claims 6, 16, 21, and 31, and we say 304 patent. I apologize, Your Honor. We transposed the patent numbers. That should have been the 024 patent. And we listed claims 4, 8, and 26 of the 304 patent. But regardless of that, Your Honor, I think this is a tempest in a teapot. Regardless of what they want to claim and whatever conclusory arguments they want to make about the dependent claims, they're not an issue and they're going to be lied. And they've got counterclaims. All this stuff is going to come back to Judge Robinson. And then with respect to opposing counsel's comments about this court's analysis or Judge Robinson's analysis or lack of analysis on Alice Court, I find it interesting. It seems to me to ask, well, first of all, that type of analysis I don't think has a place in these four factors that are considered as mandated by the statute. There's nothing in determining whether a stay is appropriate that suggests that this court or Judge Robinson should be undergoing that analysis. If anything, it seems to me that virtual agility, this court's decision in virtual agility, to some degree, criticizes the district court for getting into that type of analysis. Judge Robinson's purview was to analyze the four factors and make the best determination possible. Are you going to amend any of your claims in the CBM proceedings? No. Decidedly no. I am not CBM counsel, but I know that statement has been made. We've said it in a brief. We will not be amending any of the claims in the CBM. Let me – Ms. Fishman mentioned the counterclaims and that they would have some sort of – that they would be affected by the canceling of our claims. That may or may not be true unless Calidice is willing to agree to dismiss with prejudice immediately if those claims are canceled, which I doubt that they'd be willing to do. I'm not sure how that is relevant. What if the other round of CBMs get granted? And then what if a year from now all the claims of your patents end up not surviving? Then maybe it is quite likely that Calidice would withdraw its counterclaims. I don't know the answer to that. I can't speak for them. But if they are instituted, we can't expect a decision for it. So that – my understanding is that decision to institute will be made on October 24th of this year. The hearing on the presently instituted CBM is October 29th. We won't have a decision probably for a year. Our trial date in this case is October 19th, 2015. So we're not going to have a decision on that until right around or after the trial. And again, that goes to all these factors, the simplification of the issues. We're not going to have a decision for another year, probably after trial. And again, still all of the claims at that point would be an issue assuming that they're all instituted. But we're still talking about only a 101 challenge. 102, 103, 112 aren't addressed and their counterclaims aren't addressed either. Did the judge below misanalyze Factor 2 by saying – by only saying that the PTAB's decision is going to be months before the trial date without really considering the current stage of the litigation at the time of when the motion to stay was filed and also the stage of the litigation at the time that the PTAB granted the first round of CBMs? I don't believe so, Your Honor. I think what the trial court said is – The trial court didn't say anything about these issues. What's the current stage of discovery? When is the Markman hearing going to be? Has there been any depositions or expert reports? She didn't go into anything that gives us any sense of her assessment of the stage of the litigation at either of those two trigger point times I just mentioned. You're right. What she said, I believe, was while discovery is not complete, a trial date has been set for October 19th, and she didn't go into any of the other stuff. But I think inherent in her – and it's not on the paper, but inherent in her decision is a – she is noting some of Caldas' litigation tactics. She mentions the preliminary motion practice, which she deemed to be relevant. But also, I mean, virtual agility instructs that – the fact of the matter is when the motion to stay was filed, discovery wasn't complete, and a trial date had been set. But virtual agility also says that you are – it is relevant to consider the current stage of litigation, which is what I understand Your Honor is asking me about. I mean, to date, a million pages of documents have been produced, not including source code. Twenty fact depositions have been taken. Caldas alone is – Yeah, but we need to go back in time, not look at it from today's point in time, but back to the time of when the CBMs were granted last spring. So when the CBMs were granted in March, discovery was underway, several discovery – at least a couple of discovery hearings had taken place. I think roughly – well, I guess we had been – I can't recall if we had been in front of the court or not yet. But discovery was underway, documents had been produced, written discovery had taken place. Depositions? Pardon? Any depositions? No depositions at that time, Your Honor. And so I – but I also think it's relevant to consider the stage of the proceedings today because when you get into some of these other factors, and I think this is part of what Virtual Agility, I think, was saying, that while this may not fit under Factor 2, Factors 3 and 4, certainly the current stage of proceedings and the resources and time expended to date are important. The fact of the matter is on a million pages of documents that have been produced, not including source code, 20 depositions have taken place. Claim construction positions have been exchanged. The joint claim construction has been filed. Experts have been disclosed and have begun work. A lot of work – there have been several discovery hearings in this case. A lot of work has gone into this case. And to ask the court – I'm sorry, to say this case and essentially say, pencils down, everybody stop, let's go address this PTA, this limited scope CBM petition, and then when it's done, we know we're going to be back with live dependent claims, we know we're going to be back with counterclaims, let's pick up our pencils and start again, is incredibly costly and inefficient. And I think it's – again, it would be different if all of these issues even might be disposed of here. But when you consider that it's a subset of the claims, when you consider that they've held back, you know, all of their prior art references from consideration to the PTAB, they filed their own counterclaims, all this stuff is going to come back. And so to stop, and I'm sure your honors are familiar with this, it would take – to stop this activity for eight to nine months to a year and then pick it back up, it's costly and inefficient. That is not reducing the burden on the parties or the court, and the court would have to get back up to speed also. Also, I think what's really important here is on the third prong with respect to the tactical advantage, the result would be what I've suggested, which is, okay, we're going to stay the case, despite all the work that's been put in, let's stop. CALIS gets to put itself in an exclusively offensive position on a sliver of this case, attack Versada's patents. I understood it, the judge below misunderstood Calis' position of wanting to pursue the counterclaims rather than staying the whole case. And it was actually crystal clear that Calis' position was to stay the entire case until after the CBMs were completed. I don't think that's at all what Judge Robinson was saying. I think that is misconstruing her order. Then how could she arrive at the conclusion that Calis was trying to gain some tactical advantage by staying the case? Because they are trying to gain tactical advantage by staying the case. But the only basis she gives for that is her belief, or I guess the misimpression, that Calis wanted to keep going in front of her on the counterclaims while staying your entire case to wait for the CBMs. I don't think that's what she says in the order.  If you look at the order, what she says is, given the fact that Calis has affirmatively asserted its patents against Versada, it is apparent that Calis is playing the stake hard as both a sword and a shield, moving forward on its interests but denying Versada the opportunity to do the same, thus presenting a clear tactical advantage for Calis, the moving party. She doesn't say that she thinks they're going to continue to assert their counterclaims. I do agree. That was made clear to her in a couple of the hearings that I was at. What she's saying, I think, is what I'm saying, which is, look, we've done all this work. Now we're going to stop. Calis gets a free shot on a subset of these claims, a free shot while Versada sits back and waits. Calis takes a shot. If they're successful, great, they've damaged the case. Now let's go assert our counterclaims. If they're not, no harm, no foul. We still have 102, 103, and 112. That's what I think she means. That kind of alleged tactical advantage would be true for any and every CBM case. I don't – well, I don't agree with that. If you think moving forward on its interests means moving forward on trying to see if the PTAB will invalidate the claims, that's the case in every CBM. Your Honor, that's true, and like my response to Judge Lynn on the simplification factor, if that were the sole inquiry, that would be it. But when you take into account the other factors, the timing of the CBM petition, the scope of the – if what was at play was a larger simplification, more of a chance that this was going to dispose of all the issues in the case, I think that would weigh more heavily in favor of them. But as it stands, given the scope of the CBM petition, the subset of the claims, the 101 challenge only, their counterclaims, I think clearly factors one, three, and four weigh heavily in our favor because whatever happens with this sliver of the CBM petition, we're going to be back and we're going to be litigating. There's no question. And experts are going to have to pick back up. The parties are going to have to pick back up and argue all this stuff. If there were more at stake within these CBM petitions, then I think they might have a stronger argument, but there's not. I think that's sort of the key, and I want to make sure I answer your question. I think that's the key difference. You're right. On factor three, certainly anytime there's a stay, the moving party is going to get to attack the patent to the PTAB and then pick things back up. But in a situation where you've got a limited, you've got a subset of claims that are challenged under a very limited basis, under 101 and they're holding back all these prior art references, I think that, and that's what virtual agility talks about as well. The tactical advantage, there was some talk about the tactical advantage of holding back some of these parties. My concern is you're providing a lot of analysis that I don't see right here, in Judge Robinson's opinion. That's my real concern. Fair enough, and correct me if I'm wrong, but my understanding is, I mean, this court can review this. I actually think this should be an abusive discretion standard, but this court can review this abusive discretion or de novo, but you can review the, not everything, some of this analysis may not be in her order, although I think she clearly addresses each and every factor in her order. But I think the record before your honors allows you to make the right determination, which is that a stay in this case is warranted. I think in particular, if you think about the policy, one of the concerns I have is, so if this type of a case gets stayed, and you've got in this sort of this subset of claims, a 101 challenge only and counterclaims asserted after aggressive preliminary motion practice and it wasn't filed for a year, what does that encourage other defendants to do? So now you know. What did you mean by aggressive preliminary motion practice? I mean, yes, they filed a motion to transfer venue, but I don't necessarily agree that that is, we should denote those kinds of motions to be some kind of nefarious aggressive litigation tactic. I don't disagree. I don't think that they are nefarious, and I don't have, to be clear, I don't have a problem with aggressive litigation tactics, but I do think at some point when you've taken up a certain amount of time and a certain amount of resources, and you file a CBN petition late in the game, and you do it on a limited scope, I don't have a problem with litigation, but you don't get a stay, and I think that's what these factors are meant to measure. And I think to stay a case like this is to encourage a policy where a defendant can pick a narrow subset of claims, file a narrow scope CBN petition, seek a stay, and again, it's back to that tactical advantage. Now they get to attack the patents on a sliver of the case and know if I'm successful, great, I've harmed them. And if I'm not, guess what? I've got all this stuff I held back that I can assert in nine months or a year. Why is it late in the game if you wait to file a CBN until after a motion to dismiss is ruled out? A couple of reasons. If the case goes away, then there's no need to file a CBN. To be clear, that motion to dismiss was never going to dispose of this case. That was a 12B6 pleading standard motion to dismiss. The case law on that is well established. The judge denied it outright. The basis of the 12B6? Pardon? What was the basis of the 12B6? If I recall correctly, it was a failure to plead properly indirect and direct infringement. I think on the direct, it had to do with not naming the accused products, which we had, and on the indirect, it was the Iqbal Twombly standard, both of which we had done, and the judge denied. But to be clear, so one, I don't think that there was a real solid basis for that. Number two, worst case scenario, the judge, even if it was granted in whole or in part, worst case scenario, we would have filed an amended complaint with a fixed pleading. The litigation was going to go forward. Third, they filed the declaratory judgment. This step was going to proceed. So I understand the question about the motion to dismiss, but my point is, and again, I don't have a problem with this outside the context of a stay. But if you go back and you look at the activity, what we're talking about here is, okay, the Calidus playbook. Complaint was filed, motion to transfer, motion to dismiss, declaratory judgment. These were every arrow in its quiver to respond to the complaint. That's fine. And then, after the case had been delayed a year, they filed the CBM petition. That's the next thing. Now a motion to stay. I don't have a problem with litigating. But why did it take a year for those motions to be decided? It didn't take a year for Judge Robinson to decide those motions. I think it took six to eight months. I don't recall exactly. It wasn't even longer than that. I think you're saying that they took over a year to file their CBMs, but in fact, that's because it took the judge below quite a bit of time to settle on those motions. That's true, but they didn't have to. My point about the motions to dismiss is they knew this litigation was going to proceed. It was not going away because of that motion to dismiss ever, whether from their declaratory judgment or us filing a fixed pleading. They could have filed the CBM early. They didn't have to wait. They knew the litigation was going to go forward. The motion to dismiss was a litigation tactic. That's fine, but they could have filed the CBM as soon as it was available in September 2012,  They chose to wait. Okay. I think you're well into your time. Thank you very much. Thank you, Your Honor. Ms. Fishman, you held back on a lot of your invalidity defenses by not putting them into the CBM. Why is that? Yeah. That suggestion, first of all, that's not a finding the district court ever made, and second of all, it's contrary to fact. At the time we put in our CBM petition, discovery had not yet commenced, and based on our preliminary investigation, our best prior art were prior art systems. They still are. We hadn't had the discovery to put together a prima facie case to submit to the PTAB, and for that reason, we submitted on Section 101. It's true we probably could have put in some claims on indefiniteness in 112, but we were also monitoring the very first CBM filed by SAP against Versada, and there the PTAB agreed to expedite proceedings if SAP would agree to limit itself to Section 101, believing that that could be handled most expeditiously, and it was our intent from the time we put in the CBMs to request expedited treatment which we did do, and in fact, the board put us on a more aggressive schedule than the default statutory schedule for CBM proceedings. So the suggestion that we held back prior art defenses is conjecture, not supported by anything in the record, not accurate, and frankly, even the district court didn't find this, that there was any kind of tactical advantage or reason for holding back, and with respect to the 326 patent, which we also challenged on 101 grounds only, in the PTAB, she instituted a stay. One other point I'd like to make, which is, in terms of the district court's analysis of stay factor one, to be clear, the fact that she did not make findings about the similarity of claims, or what would happen to the proceedings that were remaining, that comes into play because she predicated her decision on the idea that there are these claims remaining, and without findings, what happens is that conclusion boils down to the proposition that unless you are able to challenge, or unless you actually get instituted all claims, you're not going to streamline or simplify a case sufficiently to warrant a stay, or meaningfully, in the words of the court, and that's a very dangerous rule. It's not supported by the case law, and in fact, even if one does challenge all claims, there's no guarantee that they're all going to be instituted, so it is important, if that's the basis for the decision, for the district court to bear it out. There may be cases where for some reason it wouldn't simplify it, but here, given the overlap of issues, overlap of claims, it would significantly simplify issues in litigation and streamline the trial. The only thing you were arguing is 101 to the patent board. Why did it take you over a year to file a CBM petition? Because we did not prepare the CBM petitions until there was a ruling on the motion to dismiss. Why did that matter? Why did it matter? Could you just repeat the question? Was it Twombly-Iqbal? It was, we had claims against, we had every claim that they had asserted, all of their claims were under motion to dismiss. We did not believe that they, it was Twombly-Iqbal and it was also failure of notice. Their claims, we believe that their claims could be disposed of. And the second reason, candidly, your honors, is that at the same time, we were watching very closely the Versada and SAP CBM, the very first CBM, and Versada brought a challenge against the Patent Office saying that the Patent Office didn't have standing to review on 101 grounds. And it was, frankly, coincident with the ruling on our motion to dismiss that that argument was rejected. And rightly so, the Patent Office was found to control its own jurisdiction and it was permitted to continue to proceed and review on 101 grounds that first CBM. So we all was intended to, you know, to the extent we're going to file CBMs, that was our principal defense for the CBM. And that explains the timing. Okay. Nothing further. Thank you. Thank you, your honors. The case is submitted.